**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JORDAN ROY BECKERMAN,<br><br>                      Debtor. | <u>FOR PUBLICATION</u><br><br>Chapter 7<br><br>Case No. 25-11549 (JPM) |

*APPEARANCES*:

**KIRBY AISNER & CURLEY LLP**
*Counsel for Jordan Roy Beckerman*
700 Post Road Ste. 237
Scarsdale, NY 10583
By: Erica Feynman Aisner

**THE LAW OFFICES OF RICHARD J. CORBI PLLC**
*Counsel for Edmund John Lowell*
104 West 40th Street, 4th Fl.
New York, NY 10018
By: Richard J. Corbi

<u>**MEMORANDUM OPINION AND ORDER DENYING LENDER EDMUND JOHN LOWELL'S MOTION FOR ENTRY OF AN ORDER EXTENDING TIME TO OBJECT TO THE DEBTOR'S DISCHARGE AND/OR DISCHARGEABILITY**</u>

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

I. **INTRODUCTION**

This is the individual Chapter 7 bankruptcy case of Jordan Roy Beckerman (the "**Debtor**"), a former manager and principal shareholder of Yale Entertainment, LLC a/k/a Yale Productions ("**Yale Entertainment**") (which has filed its own separate Chapter 7 bankruptcy, *In re Yale Entertainment, LLC*, Case No. 25-10997 (Bankr. S.D.N.Y.)).[1] Before the Court is the motion filed on October 14, 2025 by Edmund John Lowell ("**Lowell**"), a secured creditor of Yale Entertainment but not of the Debtor, seeking to extend the deadline to object to the Debtor's discharge and/or dischargeability of debts (the "**Motion**"). (Dkt. No. 23).

On November 11, 2025, the Debtor filed a response opposing the Motion (the "**Response**"). (Dkt. No. 34). The Response argues that (1) Lowell lacks standing because he only holds a claim against Yale Entertainment, not the Debtor, and (2) Lowell had "full notice and opportunity" but had "taken no action" to pursue discovery "until one week before the deadline." (*Id.*)

On November 15, 2025, Lowell filed a reply (the "**Reply**"), asserting that (1) he has standing as a "party in interest" under Bankruptcy Rules 4004(b)(1) and 4007(c), and (2) "cause" exists for an extension because any delay was attributable to the Debtor's obstruction and Lowell pursued discovery "diligently and in good faith." (Dkt. No. 36).

A hearing on the Motion was held on November 18, 2025 (the "**Hearing**"). (Dkt. No. 38).

The Court has reviewed and considered the Motion, the Debtor's Response, Lowell's Reply, the arguments presented at the Hearing, and the record as a whole. For the reasons set forth below, the Motion is **DENIED**.

---

[1] References to "Dkt. No." are filings in the bankruptcy case *In re Jordan Roy Beckerman*, Case No. 25-11549 (Bankr. S.D.N.Y. filed July 11, 2025). References to "Yale Dkt. No." are to filings in the corporate case *In re Yale Entertainment, LLC*, Case No. 25-10997 (Bankr. S.D.N.Y. filed May 14, 2025) ("*Yale Entertainment*").

II.     **BACKGROUND**

    A.     **THE YALE ENTERTAINMENT CASE**

The Debtor co-founded Yale Entertainment, an independent film production company headquartered in New York, with Jordan Levine ("**Levine**"), who is not a party in this case. (Yale Dkt. No. 1). On May 14, 2025, the Debtor and Levine caused Yale Entertainment to file for Chapter 7 bankruptcy as a corporate debtor. (*Id.*) At the time of filing, the Debtor was a manager and principal shareholder of Yale Entertainment, holding 43.675% equity stake indirectly through Felix Productions, LLC. (Dkt. No. 23, ¶ 26).

In *Yale Entertainment*, Lowell is scheduled as a creditor holding a secured claim of $2,967,000 secured by substantially all of Yale Entertainment's assets, and an unsecured claim of $165,000. (Yale Dkt. No. 1, Schedule D & E/F). Lowell's secured claims against Yale Entertainment are evidenced by three loan agreements executed on May 20, 2024, May 31, 2024, and November 22, 2024, respectively.[2] (*Id.*; Dkt. No. 36, ¶ 6).

On September 3, 2025, the Court entered an order authorizing Lowell to issue Rule 2004 subpoenas for document production from, and for the examination of, Yale Entertainment (the "**Rule 2004 Order**"). (Yale Dkt. No. 18). The Rule 2004 subpoenas were served on the Debtor, but arguably not on Levine or Yale Entertainment.[3] (Yale Dkt. Nos. 24 & 25).

---

[2]  Lowell and Yale Entertainment executed three agreements: (1) the Company Loan Agreement dated May 20, 2024; (2) the Bridge Loan Agreement dated May 31, 2024; and (3) the Amendment and Forbearance Agreement dated November 22, 2024. Each agreement was signed by Lowell and by Jordan Levine on behalf of Yale Entertainment. (*Id.*; Dkt. No. 36, ¶ 6).

[3]  The parties have extensively litigated service of the Rule 2004 subpoenas in *Yale Entertainment*. On October 15, 2025, Lowell's counsel filed two affidavits attesting to service of the Rule 2004 subpoenas on the Debtor and the Debtor's counsel. (Related Yale Dkt. Nos. 24 & 25). Service was also attempted on Yale Entertainment, the Chapter 7 trustee in *Yale Entertainment*, and Levine, but each declined to accept service. (Related Yale Dkt. No. 32). Levine argues that neither he nor the Debtor is a proper recipient because the appointment of the Chapter 7 trustee relieved them of managerial duties, deprived them access to Yale Entertainment's books and records, and they are no longer authorized representatives of Yale Entertainment. (Related Yale Dkt. No. 43).

    On October 23, 2025, Lowell moved to confirm prior service of the Rule 2004 subpoenas and to authorize alternative service by email and the designation of agents ("**Lowell's Motion**"). (Related Yale Dkt. No. 32). On October 24, 2025, Yale Entertainment filed a cross-motion to quash or, alternatively, to reconsider the Court's prior

3

Between October 7 and 8, 2025, Lowell attempted service on Yann Geron, counsel for Yale Entertainment, who allegedly declined service. (Dkt. No. 36, ¶ 12; Yale Dkt. No. 32). Then, on October 9, 2025, Lowell moved for additional Rule 2004 discovery from third parties GoDaddy.com LLC and Microsoft Corporation, which the Court granted on October 17, 2025. (Yale Dkt. Nos. 21 & 27).

On October 23, 2025, Lowell moved for an order confirming prior service of the Rule 2004 subpoena and authorizing alternative service of process by email and designating agents for service. (Yale Dkt. No. 32). On October 24, 2025, Yale Entertainment filed a cross-motion to reconsider the Court's Rule 2004 Order or, in the alternative, to quash Lowell's Rule 2004 subpoenas. (Yale Dkt. No. 35). Following a hearing on November 19, 2025, the Court granted Lowell's motion and denied Yale Entertainment's cross-motion, and directed the parties to confer as a result of certain aspects of the Court's ruling.

### B.   THE DEBTOR'S INDIVIDUAL BANKRUPTCY

On July 11, 2025, the Debtor filed this Chapter 7 case in his individual capacity. (Dkt. No. 1). The Debtor reports total assets of $1,372,587 and total liabilities of $13,439,893. (Dkt. No. 14, Form 106). His scheduled secured creditors are: (1) BMW Financial Services (liens on his two vehicles); (2) Walden Savings Bank (a $894,269 first mortgage on his residence); and (3) Lake Michigan Credit Union (a $350,000 second mortgage on his residence). (*Id*., Schedule D.) The Debtor's unsecured creditors include, among others: (1) Levine; (2) his spouse Rachel Beckerman; and (3) several of Yale Entertainment's secured creditors (but not including Lowell), who extended

---

order granting the issuance of Rule 2004 subpoenas (the "**Cross-Motion**"). (Related Yale Dkt. No. 35) Lowell objected to the Cross-Motion on November 12, 2025 ("**Lowell's Objection**"). (Related Yale Dkt. No. 46). On the same day, Levine objected to Lowell's Motion ("**Levine's Objection**") (Related Yale Dkt. No. 43), and Lowell filed a reply ("**Lowell's Reply**"). (Related Yale Dkt. No. 49).
    The Court held a hearing on November 19, 2025. After considering the parties' augments at the hearing and record as a whole, the Court **GRANTED** Lowell's Motion and **DENIED** Yale Entertainment's Cross-Motion, and directed the parties to confer as a result of certain aspects of the Court's ruling.

loans for which the Debtor acted as a personal guarantor.[4] Although Lowell appears on the Verification of Creditor Matrix attached to the Debtor's Chapter 7 petition, he is *not* scheduled as a creditor and has *not* filed a claim against the Debtor individually (nor does he claim to be a creditor of the Debtor). (Dkt. Nos. 1 & 14).

On July 16, 2025, a § 341 creditors' meeting was scheduled for August 20, 2025 in the Debtor's case. (Dkt. No. 2). The revised notice set October 20, 2025 as the deadline to object to discharge or dischargeability of debt. (Dkt. No. 12). At the § 341 meeting, Lowell's counsel was allegedly "limited to one question he could ask the Debtor." (Dkt. No. 36, ¶ 5).

No discovery has been sought in this case. On September 17, 2025, the Chapter 7 trustee issued a report of no distribution ("**No-Asset Report**"), asserting that "a diligent inquiry into the [Debtor's] financial affairs" revealed "no property available for distribution." (Dkt. Sept. 17, 2025).

On October 14, 2025—one week before the objection deadline—Lowell filed the instant Motion seeking an extension. (Dkt. No. 23). The Debtor filed the Response on November 11, 2025 (Dkt. No. 34), and Lowell filed the Reply on November 15, 2025. (Dkt. No. 36). The Chapter 7 trustee has not responded. The Hearing was held on November 18, 2025. (Dkt. No. 38).

### III. <u>LEGAL STANDARD</u>

Section 727 of the Bankruptcy Code requires a court to grant a Chapter 7 discharge "unless one of the enumerated grounds for denial of discharge is proven." *In re Gardner*, 384 B.R. 654, 662 (Bankr. S.D.N.Y. 2008); *see also* 11 U.S.C. §§ 727(a)(1)-(12) (grounds include, among others,

---

[4] There is a substantial overlap between the Debtor's creditors and Yale Entertainment's creditors. In the Debtor's individual bankruptcy, the following creditors hold unsecured claims, while they hold secured claims in the Yale Entertainment case: Kerberos Capital Fund III LP, Ocean Crest Ventures LLC, Miro Productions LLC, and Complex Management LLC. (Dkt. No. 14; Yale Dkt. No. 1).
   The following creditors are scheduled as unsecured in both the Debtor's case and the Yale Entertainment case: Forward Financing LLC, Dual Venture LLC, BizFund LLC, Kurt Ebner, and Bee Hive Productions LLC. (Dkt. No. 14; Yale Dkt. No. 1).

5

transferring or concealing property with intent to hinder, delay, or defraud creditors; failure to keep or preserve adequate records; making a false oath or account; failure to explain loss of assets; and refusal to obey court orders).

A discharge under § 727 releases the debtor from personal liability for all debts except those deemed nondischargeable under § 523. *See* 11 U.S.C. § 727(b). Nondischargeable debts under § 523 include, for example, certain tax obligations, child support and alimony, educational loans, and certain fines and penalties. *See Grogan v. Garner*, 498 U.S. 279, 287 (1991) (citing 11 U.S.C. §§ 523(a)(1)-(8)).

"A creditor may object to the debtor's discharge under [§] 727(a)" by filing an adversary complaint under Bankruptcy Rule 4004. *In re Butler*, 308 B.R. 1, 18 (Bankr. S.D.N.Y. 2004). Rule 4004(a) sets the deadline: "a complaint objecting to the debtor[']s discharge under § 727(a) … shall be filed no later than 60 days after the first date set for the meeting of creditors." *Id*. (citing *Kontrick v. Ryan*, 540 U.S. 443, 443 (2004)); *see also* Fed. R. Bankr. P. 4004(a). Similarly, "a complaint to determine the dischargeability of a debt under [§] 523(c)" shall be filed by the same 60-day deadline. *In re Bressler*, 600 B.R. 739, 743 (Bankr. S.D.N.Y. 2019); *see also* Fed. R. Bankr. P. 4007(c). Before those deadlines expire, "any party in interest" may move to extend the filing deadline "for cause." *In re Sklar*, 626 B.R. 750, 769 (Bankr. S.D.N.Y. 2021) (citing Fed. R. Bankr. P. 4004(c) and 4007(c)).

## IV. ANALYSIS

### A. STANDING

The initial question presented in the Motion is whether Lowell has standing to seek an extension. Although objections to debt discharge (§ 727) or dischargability (§ 523) are typically brought by creditors, Rule 4004(b)(1) authorizes "any party in interest" to move for an extension.

6

*See In re McMahon*, 2022 WL 17330920, at *4 (Bankr. E.D.N.Y. Nov. 29, 2022) (citing Fed. R. Bankr. P. 4004(b)(1)).

The Bankruptcy Code does not define "party in interest." *See Krys v. Official Committee of Unsecured Creditors of Refco, Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) (citing *Roslyn Savings Bank v. Comcoach Corp.*, 698 F.2d 571, 573 (2d. Cir. 1983)). But "the phrase has generally been interpreted in a Chapter 7 case to refer to creditors of the debtor who have claims against the estate and whose pecuniary interests are directly affected by the bankruptcy proceedings." *In re Richardson Foods, Inc.*, 667 B.R. 500, 520 (Bankr. S.D.N.Y. 2025). The Supreme Court has emphasized that "anyone holding a direct financial stake in the outcome of the case" may qualify as a "party in interest." *Id.* at 522 (quoting *Truck Insurance Exchange v. Kaiser Gypsum Company, Inc.*, 602 U.S. 268, 277-78 (2024)). In *Truck Insurance*, the Supreme Court held that an "insurer with financial responsibility for bankruptcy claims"—though not a creditor—was a "party in interest" because its financial interests could be "directly or adversely affected" by the debtor's bankruptcy process. *Truck Insurance*, 602 U.S. at 281; *see also Richardson Foods*, 677 B.R. at 522. While *Truck Insurance* arose in the context of a Chapter 11 reorganization, this Court has found in *Richardson Foods* that, in a Chapter 7 liquidation, the party seeking "party in interest" standing must demonstrate a "direct financial stake in the outcome of the case." *Richardson Foods*, 677 B.R. at 522 (citing *Truck Insurance*, 602 U.S. at 284).

Under these standards, the Court finds that Lowell is a "party in interest." Although he does not hold a claim against the Debtor individually, he is a secured creditor of Yale Entertainment, a company in which the Debtor "acted as a principal in the company's financing decisions rather than as a passive equity holder." (Dkt. No. 36, ¶ 38; Exhibit E). At the § 341 meeting, the Debtor acknowledged holding a 43.675% equity stake in Yale Entertainment through

7

Felix Productions, LLC, an entity formed solely to hold the Debtor's interest. (Dkt. No. 23, ¶ 26). Furthermore, the creditors in the Debtor's individual bankruptcy substantially overlap with those in Yale Entertainment's case. (Dkt. No. 36, ¶ 22). Many of Yale Entertainment's secured creditors—including Kerberos Capital Fund III LP, Ocean Crest Ventures LLC, Miro Productions LLC, and Complex Management LLC—hold unsecured claims against the Debtor by virtue of personal guaranty agreements. (Dkt. No 14; Yale Dkt. No. 1). Thus, a discharge in this case could potentially impact Lowell's recovery in *Yale Entertainment*, as well as the administration of any interrelated or overlapping claims.

To the extent the Debtor argues that Lowell lacks "party in interest" standing because Lowell is not in contractual privity with the Debtor—whether as a creditor or as an obligee of a personal guaranty agreement—the Court is unpersuaded. (Dkt. No. 34, ¶ 21). A party need not be in contractual privity with the debtor to qualify as a "party in interest." *See In re Ascentra Holdings, Inc.*, 657 B.R. 339, 352 (Bankr. S.D.N.Y. 2023) (holding that a party may establish standing by "asserting a pecuniary interest … [or] an equitable claim against the estate.") (citations modified). It suffices to show that the party possesses a "direct financial stake in the outcome" of asset distribution, whether through a contractual claim or otherwise. *In re Suffolk Regional Off-Track Betting Corp.*, 462 B.R. 397, 403 (Bankr. E.D.N.Y. 2011) (quoting *In re Inosphere Clubs, Inc.*, 208 B.R. 812, 814 (S.D.N.Y. 1997)). Lowell has made that showing. The Debtor cites no legal authority requiring that a party in interest be "a creditor, signatory, or guarantor." (Dkt. No. 34, ¶ 21). On this record, the Court finds that Lowell has demonstrated a financial stake and a sufficient nexus to the Debtor and the estate to qualify as a "party in interest" under Rules 4004(b)(1) and 4007(c).

    **B.**    **"CAUSE" FOR EXTENSION**

The next issue presented is whether Lowell has sufficiently established "cause" to extend the Rule 4004 deadline. The movant bears this burden and must support the request with specific facts; conclusory assertions are insufficient. *See In re Higgins*, 270 B.R. 147, 157 (Bankr. S.D.N.Y. 2001) ("If the burden of establishing cause for extension of a time limit is not met by the moving party, the motion shall be denied."). Ultimately, the party "asserting the non-dischargeability of a debt bears the burden of proof by a preponderance of the evidence." *In re Bressler*, 601 B.R. 318, 333 (Bankr. S.D.N.Y. 2019).

"Cause" is not defined by the Bankruptcy Code. Instead, that "determination is committed to the [bankruptcy] court's discretion." *In re Nowinski*, 291 B.R. 302, 305 (Bankr. S.D.N.Y. 2004). In the Second Circuit, factors that "inform the court's discretion" include:

(1) whether the creditor had sufficient notice of the deadline and the information to file an objection;
(2) the complexity of the case;
(3) whether the creditor exercised diligence;
(4) whether the debtor refused in bad faith to cooperate with the creditor; and
(5) the possibility that proceedings pending in another forum will result in collateral estoppel on the relevant issues.

*Id*. (citing, *inter alia*, *In re Mendelsohn*, 202 B.R. 831, 832 (Bankr S.D.N.Y. 1996); *In re Grillo*, 212 B.R. 744, 747 (Bankr. E.D.N.Y. 1997); *In re Weinstein*, 234 B.R. 862, 866 (Bankr. E.D.N.Y. 1997); *In re Benedict*, 90 F.3d 50, 55 (2d Cir. 1996)).

Considering all five factors as a whole, the Court finds that Lowell has failed to carry his burden to establish "cause" by a preponderance of the evidence.

### (i)    Notice and Opportunity

The Court finds that this factor weighs against an extension. The Debtor argues that Lowell had "ample notice and opportunity" to file a § 727 / § 523 objection, noting that Lowell had "contacted Debtor's counsel" as early as "June 2025." (Dkt. No. 34, ¶ 10). By Lowell's own

9

admission, his counsel "drafted a complaint" alleging "fraudulent inducement and fraudulent concealment in connection with Lowell's 2024 financing of Yale Entertainment" and threatened to file it. (Dkt. No. 23, Exhibit C). But Lowell "did not file [the] complaint." (Dkt. No. 34, ¶ 11). According to the Debtor, after attending the Debtor's § 341 meeting on August 20, 2025, Lowell "did not … seek discovery" and instead "chose to wait until less than a week before October 20, 2025" to file an extension. (*Id.*)

Lowell concedes notice but attributes delay to the Debtor's obstruction. Lowell alleges that the Debtor "refused to answer questions at the [Debtor's] § 341 meeting," joined Yale Entertainment's "motion to quash [Rule 2004] subpoenas," and "has not facilitated service or production of records," notwithstanding the Rule 2004 Order in *Yale Entertainment*. (Dkt. No. 36, ¶ 21). Lowell further asserts that Yale Entertainment's counsel "instructed the Debtor … not to respond [to Lowell's requests] on the grounds that [Lowell had] already obtained the Rule 2004 Order." (*Id.* ¶ 10). Based on these allegations, Lowell argues that denying an extension would allow the Debtor to "benefit from his own obstruction." (Dkt. No. 34, ¶ 21).

The Court disagrees with Lowell's arguments. Lowell attended the Debtor's § 341 meeting, had timely notice of the October 20, 2025 deadline, and prepared a draft complaint as early as July 17, 2025. (Dkt. Nos. 12 & 23). The record reflects adequate notice. *See In re Kramer*, 492 B.R. 366, 371 (Bankr. E.D.N.Y. 2013) (finding sufficient notice where the creditor "received notice of and attended the [§] 341 meeting and was aware of the deadline."). Moreover, despite circulating and threatening to file the complaint, Lowell never filed it—yet now seeks an extension. (Dkt. No. 23, Exhibit C). While the Court is not making any findings regarding the strength of Lowell's potential § 727 / § 523 claims, these facts undercut Lowell's assertion that he lacked notice or opportunity to timely object.

10

As for the alleged "Debtor obstruction," the only conduct that Lowell identifies in this case is the Debtor's purported refusal to answer Lowell's questions at the § 341 meeting. (Dkt. No. 36, ¶ 5). All other alleged acts of obstruction concern Rule 2004 discovery in *Yale Entertainment*. (*Id*. ¶ 21). While refusal to answer questions at a § 341 meeting may not reflect total cooperation (*see infra* Section II(B)(iv)), the circumstances here do not support a finding of obstruction because Lowell is not a creditor and had not pursued any discovery in this case. (*Id*.) A debtor is obligated to answer questions posed by the trustee and creditors at the § 341 meeting. *See Pereira v. United States Department of Justice*, 2016 WL 2745850, at *2 (S.D.N.Y. May 11, 2016) ("The debtor is statutorily obliged to appear at the [§ 341] meeting and answer under oath questions from the trustee and creditors regarding the estate."); *see also In re Holland*, 2019 WL 3283050, at *11 (Bankr. D. Vt. July 19, 2019) (denying extension of Rule 4004 deadline where the debtor had "answered all questions asked by the creditor's counsel"); *but see* 11 U.S.C. § 341(e) (noting that the court may, "for cause," order that the "trustee not convene a [§ 341] meeting of creditors" upon the request of "a party in interest"). Regarding any alleged instances of debtor obstruction related to Rule 2004 discovery in *Yale Entertainment*, Lowell cites no legal authority requiring or permitting the Court to impute discovery-related conduct from another proceeding to excuse his failure to meet the objection deadline here, especially when he did not file a complaint or pursue any discovery in this case.

**(ii)    Complexity**

The Court finds that this factor is neutral. In assessing complexity, courts consider whether the case presents unusual issues, multiple parties, interrelated entities, or records dispersed across third parties such that meaningful investigation cannot reasonably be completed within the ordinary Rule 4004 timeframe. *See, e.g.*, *In re Kellogg*, 41 B.R. 836, 837 (Bankr. W.D. Okla.

11

1984) (extending deadline where "there [were] complexities" and "many parties and issues [were] affected"); *In re Floyd*, 37 B.R. 890, 891 (Bankr. N.D. Tex. 1984) (extending deadline to allow a creditor to undertake discovery and clarify its position where affairs of the debtor were complex). In the Chapter 7 context, "complexity" is found where there are atypical features, issues, or claims beyond a straightforward liquidation. *See In re Gotay*, 2005 WL 3789330, at *2 (Bankr. S.D.N.Y. Aug. 30, 2005) (denying extension where the case is "a straightforward Chapter 7 liquidation containing little complexity with regard to the parties, issues and affairs of the [d]ebtor").

Here, while the record indicates that some creditor claims may be intertwined with those in *Yale Entertainment*, it does not establish that the Debtor's case is unusually complex. Lowell argues that this is an atypical consumer Chapter 7 because it is "economically and procedurally intertwined with" *Yale Entertainment*, since both cases involve "the same insiders, overlapping creditors, and … guarantees giv[ing] rise to potential claims[.]" (Dkt. No. 36, ¶ 2). But Lowell does not identify specific insider transactions, intercompany transfers, or books and records under the custody of third parties that he cannot reasonably access within the ordinary Rule 4004 timeframe.[5]

---

[5] The only paragraph in the Motion that gestures at "insider transactions" or "intercompany transfers" is the following:
> Preliminary financial materials in the Yale Entertainment case reflect significant insider transactions—including more than $800,000 during 2024 and approximately $3.85 million cumulatively through December 31, 2024—allocated to Mr. Beckerman and Mr. Levine; these distributions material depleted members' capital and are reflected in Yale Entertainment's negative members' equity—approximately $9.62 million as of December 31, 2024 (increasingly to approximately $9.90 million by April 29, 2025); accordingly, completion of Bankruptcy Rule 2004 discovery in Yale Entertainment is directly relevant to discharge and dischargeability issues here.

(Dkt. No. 23, ¶ 25).

Although this paragraph describes aggregate dollar figures and date ranges, the Court views it as factually insufficient for purposes of Rule 4004. Lowell identifies no specific transfer, counterparty, account, document, or date. He ties no transaction to a particular § 727 ground (*e.g.*, concealment, false oath, failure to keep records) and articulates no "viable or colorable" § 523 claim (*e.g.*, false pretenses, actual fraud) traceable to the Debtor personally. *See Thompson*, 177 B.R. 433, 450 (Bankr. E.D.N.Y. 1995) (holding that a movant must at least show a "viable or colorable" theory of non-dischargeability). Indeed, Lowell neither filed a § 727 / § 523 complaint nor explained in the Motion which legal bases he might attempt to pursue.

To the extent that Lowell's draft § 727 / § 523 complaint suggests claims of "fraudulent inducement" or "fraudulent concealment," he must plead sufficient facts to describe "the circumstances constituting fraud … with

12

Nor has Lowell presented concrete factual or legal complexities giving rise to potential § 727 / § 523 claims against the Debtor. Although Lowell broadly asserts complexity due to possible insider dealings and commingling of assets, he does not articulate those theories in a way that maps onto specific § 727 or § 523 grounds. (Dkt. No. 23, ¶ 25). Unlike certain Yale Entertainment secured creditors (*e.g.*, Kerberos Capital Fund III LP) that hold unsecured claims against the Debtor via personal guaranties, Lowell is not a party, obligee, or beneficiary to any such guaranty. (Dkt. No. 34, ¶ 21). Lowell does not point to any concrete interrelated claims and entities, beyond asserting that "at least six of the same lenders representing at least approximately $3.3 million in funded principal obligations" appear in both cases. (Dkt. No. 36, ¶ 22). Certain overlapping creditors and shared background facts, without more, do not establish unusual complexity. Although Rule 4004 does not require a fully-developed § 727 / § 523 claim, it does require a "viable or colorable claim" of non-dischargeability to justify extension. *See In re Thompson*, 177 B.R. 443, 450 (Bankr. E.D.N.Y. 1995) (holding that § 523 only require a creditor to show that it "has a viable or colorable claim that its debt is non-dischargeable … and not to prove its claim on the merits."); *see also In re Bartomeli*, 303 B.R. 254, 268 (Bankr. D. Conn. 2004) (holding that "only a showing that a colorable or viable [§ 523] claim exists is required.") (internal citations omitted). Lowell has not met this burden.

The Debtor has also not demonstrated that his individual Chapter 7 case is plainly straightforward. The fact that the Debtor "is not a party, signatory, or guarantor to any transactions with [Lowell]" does not, by itself, suggest that this is a simple case of consumer liquidation. (Dkt.

---

particularity." *Novak v. Kasaks*, 216 F.3d, 306 (2d. Cir. 2000); *see also In re Synchrony Financial Securities Litigation*, 988 F.3d 157, 169 (2d. Cir. 2021). Pleading fraud with "particularity" means "specifying the who, what, where, and how [of the fraud]." *Reynolds-Sitzer v. EISAI, Inc.*, 586 F.Supp.3d 123, 135 (N.D.N.Y. 2022); *see also Paraco Gas Corp. v. Travelers Casualty and Surety Co. of America*, 51 F.Supp.3d 379, 392 (S.D.N.Y. 2014) ("[T]he plaintiff must allege specific facts as to the fraud, including the misleading statements, speaker, time, place, individuals involved, and specific conduct at issue."). While a Rule 4004 extension does not demand a well-pleaded complaint, it does require more than generalized references to "insider transactions" and negative equity at a corporate affiliate.

13

No. 34, ¶ 21). Complexity turns on the presence of atypical issues, the Debtor's ties to third parties, and accessibility of relevant information—not on contractual privity with the movant. *See, e.g.*, *Thompson*, 177 B.R. at 450; *Kellogg*, 41 B.R. at 837; *Floyd*, 37 B.R. at 891.

Given that neither side has substantiated its position with specific facts, the Court cannot conclude that this is either an unusually complex case warranting more time or a straightforward liquidation. On its face, the Chapter 7 trustee's No-Asset Report suggests administrative simplicity. (Dkt. Sept. 17, 2025). However, the possibility of claims related to the Debtor's role at Yale Entertainment, if supported by concrete facts, could complicate the issues. On balance, the current record does not tip the scale either way.

**(iii)  Diligence**

The Court finds that this factor weighs against an extension. "The majority view is that there can be no cause justifying an extension of time to object to discharge where the party seeking the extension failed to diligently pursue discovery prior to the expiration of the deadline." *In re Chatkhan*, 455 B.R. 365, 368 (Bankr. E.D.N.Y. 2011) (quoting *Grillo*, 212 B.R. at 747 (denying extension where the creditor waited until five days prior to expiration to file an extension)); *see also Mendelsohn*, 202 B.R. at 832 (denying extension where the creditor failed to seek a Rule 2004 examination and moved for an extension on the last day to file an objection to discharge); *accord In re Leary*, 185 B.R. 405, 406 (Bankr. D. Mass. 1995) (denying extension where the creditor waited until ten days prior to the expiration of the deadline to pursue Rule 2004 examinations).

The circumstances here do not justify a deviation from the majority rule. Lowell contends that he had pursued discovery "diligently and in good faith," and any delays stemmed from difficulties obtaining documents—not from inaction. (Dkt. No. 36, ¶ 2). Lowell represents that he has "engaged in ongoing discovery" in *Yale Entertainment* "in which the Debtor has … been

14

served with a subpoena pursuant to the Rule 2004 Order." (Dkt. No. 23, ¶ 24). Before filing this Motion, Lowell also pursued additional Rule 2004 relief in the Yale Entertainment case. (*Id*.) Lowell argues that those discovery efforts are both relevant and necessary for potential § 727 / § 523 objections here because the Debtor and his co-manager allegedly continue to withhold "account data, mailboxes, logs, and metadata," which are "essential to evaluating whether there has been any concealment, failure to maintain records, or false oath."[6] (Dkt. No. 36, ¶ 19).

In response, the Debtor argues that none of those discovery efforts demonstrate diligence in this case because they occurred exclusively in the separate Yale Entertainment case. (Dkt. No. 34, ¶ 11). The Court agrees. It is undisputed that no discovery was sought in this case before (or after) the Rule 4004 deadline lapsed. (*Id*. ¶ 14). The Debtor's individual Chapter 7 case is legally distinct from Yale Entertainment's corporate case. Absent joint administration (which no party sought) or consent, discovery undertaken solely in *Yale Entertainment* does not satisfy the diligence requirement here. *See Johnson v. Insider Inc*., 2022 WL 16836819, at *1 (S.D.N.Y. Nov. 8, 2022) (noting that, while courts may "consolidate related cases [for joint administration] *sua sponte*[,] … consolidation is appropriate when actions pending before the court involve a common question of law or fact.") (internal quotations omitted). The Court will not treat the two cases as a single proceeding based solely on the Debtor's prior role as Yale Entertainment's principal shareholder and manager. Accordingly, the Court finds that Lowell has failed to establish diligence by a preponderance of the evidence.

---

[6]    In *Yale Entertainment*, the Debtor and Levine dispute Lowell's assertion that they control Yale Entertainment's books and records. They argue that, upon the Chapter 7 filing, the Chapter 7 trustee—not the company's former managers and directors—became the proper custodian of the debtor's books and records and the administrators of estate property. (Yale Dkt. No. 43, ¶¶ 13-14). The Court agrees. *See Morrison v. United States Trustees*, 2010 WL 265394, at *3 (E.D.N.Y. June 24, 2010) ("Once the trustee is appointed, the trustee becomes the estate's sole representative."); *see also In re Dicks*, 579 B.R. 704, 708 (Bankr. E.D.N.Y. 2017) ("In a Chapter 7 case, the trustee is solely responsible for administering the assets of the estate*.")*; *In re Lion Capital Group*, 44 B.R. 690, 703 (Bankr. S.D.N.Y. 1984) ("[T]he Trustee … has possession of the corporate books, records, and files of [the] debtors.").

15

**(iv)    Debtor Cooperation**

The Court finds that this factor weighs against an extension. In assessing the "degree of cooperation by a debtor in providing requested information," courts look for indicia of "bad faith." *McMahon*, 2022 WL 17330920, at *5. "Bad faith" refusal of discovery requests can be inferred from a party's "failure to respond … [despite] repeated attempts at communication," and "failure to offer any explanation for refusal[.]" *Amador v. Andrews*, 2009 WL 3963964 at *2 (S.D.N.Y. Nov. 19, 2009); *see also Brill v. Queens Lumber Co., Inc.*, 2012 WL 441287 at *4 (E.D.N.Y. Feb. 10, 2012). Absent a finding of bad faith, "mere recalcitrance in discovery does not support a finding of cause." *McMahon*, 2022 WL 17330920, at *5 (quoting *Nowinski*, 291 B.R. at 307); *see also Benedict*, 90 F.3d at 55 (noting that while "recalcitrant behavior in complying with … discovery requests" may be an appropriate basis to extend a creditor's time under certain circumstances, it is not a sufficient ground absent a finding of bad faith).

As noted above, Lowell alleges that the Debtor impeded discovery by refusing to answer questions at the § 341 meeting and by failing to produce key documents notwithstanding the Rule 2004 Order in *Yale Entertainment*. (Dkt. No. 36, ¶ 21). He further asserts that Yale Entertainment's counsel instructed the Debtor not to respond to Lowell's requests, which allegedly evidences bad faith refusal. (*Id.*). The Debtor responds that any alleged non-cooperation in *Yale Entertainment* is irrelevant here because, in the Debtor's individual Chapter 7, Lowell "made no formal request to obtain discovery" from the Debtor. (Dkt. No. 34, ¶ 22). The Court finds that the record in this case does not show discovery requests directed to the Debtor that went unanswered. Absent additional facts, the record does not support a finding of bad faith non-cooperation in this case.

To the extent that Lowell argues that he was treated disparately from similarly situated creditors—which purportedly reflects bad faith non-cooperation—the Court disagrees. Lowell

16

points out that the Debtor "stipulated with Kerberos Capital Fund III LP to extend [its] deadline object to dischargeability under [§] 523," yet "opposes a comparable extension for Lowell." (Dkt. No 36, ¶¶ 33-34). But Kerberos is not similarly situated. Kerberos holds a direct unsecured claim against the Debtor by virtue of a personal guaranty that the Debtor executed in connection with Kerberos's loan extension to Yale Entertainment. (Dkt. No. 38; Yale Dkt. No. 1). Lowell, by contrast, is neither a signatory to nor beneficiary of any such guaranty from the Debtor. (*Id*.) Given that Kerberos and Lowell stand differently with respect to the Debtor, their treatment does not reflect bad faith and provides no basis to infer non-cooperation.

Because no discovery was sought from the Debtor in this case before the Rule 2004 deadline, and the record does not establish bad faith non-cooperation by the Debtor, the "debtor cooperation" factor weighs against an extension.

### (v) Possibility of Collateral Estoppel

The Court finds that this factor weighs against an extension. "The common-law doctrine of collateral estoppel … embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality." *In re Mulligan*, 560 B.R. 22 (Bankr. D. Conn. 2016). Its purpose is "to relieve parties of the cost and vexation of repetitious lawsuits, conserve judicial resources and promote the certainty of judicial determinations." *In re Hooker Investments, Inc.*, 131 B.R. 922, 925 (Bankr. S.D.N.Y. 1991) (citing *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1947)). "Factors that counsel against application of collateral estoppel include: inability to obtain review of the prior judgment; whether the available relief in the two actions is different; lack of foreseeability at the time of the prior action that the issue would arise in subsequent litigation; and the ability of the precluded party to have a full and fair adjudication in the prior action." *Sanders v. Sanders*, 2021 WL 4392053, at *11 (S.D.N.Y. Sept. 24, 2021).

17

Lowell has not shown that the pending disputes in *Yale Entertainment* will likely result in collateral estoppel in this case. Indeed, issues concerning the Debtor's conduct in his managerial capacity in *Yale Entertainment* could theoretically produce findings bearing directly on certain elements of § 727 and § 523 claim in this proceeding (*e.g.*, material omissions, false oaths, transfers or concealment, or willful and malicious injury). However, Lowell has not advanced any "viable or colorable" § 727 / § 523 claims in this case, since he neither filed the draft complaint nor articulated a theory of non-dischargeablity in the Motion. *See In re Thompson*, 177 B.R. at 450 (requiring a showing of a "viable or colorable claim that … debt is non-dischargeable[.]"). Nor has there been a showing that the issues determined here will have a collateral estoppel effect in *Yale Entertainment*. Collateral estoppel does not apply where the would-be issues are merely speculative or not shown to be identical to those litigated in *Yale Entertainment*. *See Central Torah Education & Scholarship Fund, Inc. v. Solomon Capital LLC*, 621 Fed. Appx. 64, 54 (2d Cir. 2015) ("Four elements must be met for collateral estoppel to apply: (1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits.").

Because the Debtor's individual case is distinct from *Yale Entertainment*, granting an extension of here would not promote judicial economy or prevent re-litigation of issues already decided. It would instead postpone the Debtor's fresh start without a concrete showing that identical, actually-litigated issues in *Yale Entertainment* would be dispositive of a well-pleaded § 727 / § 523 complaint in this case. Thus, this factor weighs against an extension.

V. **<u>CONCLUSION</u>**

For the foregoing reasons, the Court finds that Lowell has failed to carry his burden to establish "cause" for extension under Bankruptcy Rules 4004(c) and 4007(c).

Accordingly, the Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 25, 2025
      New York, New York      /s/ John P. Mastando III
                                        HONORABLE JOHN P. MASTANDO III
                                        UNITED STATES BANKRUPTCY JUDGE